UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, 1111 Polaris Parkway, Columbus, Ohio 43240,<br><br>                Plaintiff,<br><br>           v.<br><br>FEDERAL DEPOSIT INSURANCE CORPORATION, in its capacity as Receiver for Washington Mutual Bank, 550 17th Street N.W., Washington, D.C. 20429,<br><br>           – and –<br><br>FEDERAL DEPOSIT INSURANCE CORPORATION, in its corporate capacity, 550 17th Street N.W., Washington, D.C. 20429,<br><br>            Defendants. | Case No. _____ |

## COMPLAINT

JPMorgan Chase Bank, National Association ("JPMC"), by and through its attorneys, Sullivan & Cromwell LLP, alleges on knowledge as to itself and its conduct and upon information and belief as to all other matters as follows:

## NATURE OF ACTION

1.       JPMC brings this complaint for indemnification and declaratory judgment against the Federal Deposit Insurance Corporation in its capacity as Receiver for Washington Mutual Bank ("WMB") (the "FDIC-Receiver") and in its corporate capacity ("FDIC-Corporate") (collectively, the "FDIC") arising from a payment from JPMC to the Connecticut Department of

Revenue Services ("Connecticut") in settlement of a tax assessment by the State of Connecticut against WMB.  Under the terms of the Purchase & Assumption Agreement between JPMC, the FDIC-Receiver, and FDIC-Corporate, dated as of September 25, 2008, a true and correct copy of which is attached as Exhibit A hereto (the "P&A Agreement"), payment of the tax assessment underlying this action was and is the responsibility of the FDIC-Receiver.  Despite repeated timely notices from JPMC, however, the FDIC-Receiver has refused to acknowledge its responsibility for the assessment, leaving JPMC to negotiate a settlement with Connecticut and bring this action for indemnification.

2.      Under the P&A Agreement, JPMC acquired essentially all of the assets and assumed certain specified liabilities of WMB.  With certain exceptions not relevant here, the liabilities assumed by JPMC were limited to those on WMB's "Books and Records," with a "Book Value," when WMB was closed.  JPMC did not assume any liabilities of WMB that did not have a Book Value on WMB's Books and Records at the time WMB was placed into receivership, nor did it assume, for those liabilities on WMB's Books and Records, liability for any amounts in excess of such Book Value.

3.      When WMB was closed, its Books and Records listed as a receivable—that is, an asset—an expected tax refund from Connecticut in the amount of $6.2 million.  At that same time, WMB's Books and Records listed no tax liability to Connecticut.

4.      In 2009, after WMB closed, Connecticut issued tax assessments against WMB, seeking approximately $26 million in tax payments for the years 2000 to 2005.  After reviewing further information, Connecticut subsequently indicated orally that these assessments would be lowered to $16 million.

5.     Under the P&A Agreement, JPMC did not assume, expressly or otherwise, liability for taxes assessed against WMB after September 25, 2008 based on WMB's activities prior to September 25, 2008 that were not on WMB's Books and Records with a Book Value when WMB was closed.  Therefore, JPMC did not assume liability for Connecticut's tax assessments.

6.     The P&A Agreement requires the FDIC-Receiver to indemnify JPMC for "any and all costs, losses, liabilities, expenses (including attorneys' fees) . . . , judgments, fines and amounts paid in settlement actually and reasonably incurred in connection with claims against [JPMC] . . . based on liabilities of the Failed Bank that are not assumed by the Assuming Bank pursuant to this Agreement . . . ."  The FDIC-Receiver must also indemnify JPMC against "claims based on any action or inaction prior to Bank Closing of the Failed Bank, its directors, officers, employees or agents as such, or any Subsidiary or Affiliate of the Failed Bank, or the directors, officers, employees or agents as such of such Subsidiary or Affiliate."  To the extent that the FDIC-Receiver does not or cannot meet its obligations to indemnify JPMC, FDIC-Corporate guarantees these obligations.

7.     Acting under a power of attorney granted by the FDIC-Receiver, and with repeated timely notice to the FDIC, JPMC negotiated a settlement, whereby Connecticut would receive $2.65 million in exchange for relinquishing any claims against WMB for taxes for all years through 2008, the year of WMB's closing (the "Settlement").

8.     Because JPMC did not assume any liability of WMB to Connecticut, it informed the FDIC of the negotiation of the Settlement, advised the FDIC that any liability to Connecticut was not assumed by JPMC, and asked how the FDIC wanted to proceed.

9.     The FDIC responded that "the tax obligations due the State of Connecticut were reflected on JPMC's [*sic*: WMB's] books and records when it was closed" and refused to acknowledge that it did not transfer liability for such later-asserted obligations under the P&A Agreement.

10.     In response, JPMC repeatedly asked the FDIC to identify the "books and records" to which the FDIC was referring.  The FDIC declined to do so, but stated, "If you believe that it is in JPMC's interest to accept Connecticut's offer, you should do so.  Because this is a liability that passed to JPMC under the P&A [Agreement], you are not entitled to indemnification for any payment to Connecticut and do not need the FDIC-R[eceiver]'s permission to settle this claim."

11.     The FDIC's current position is in direct contravention of the plain language of the P&A Agreement and lacks any good-faith basis, as demonstrated by the FDIC's refusal to specify the "books and records" of WMB on which it claimed the later-asserted liability was reflected.  It is also in direct contravention of the FDIC's own contemporaneous statements to JPMC in the ordinary course, in which the FDIC expressly acknowledged that JPMC never assumed liability for post-closing assessments such as Connecticut's.

12.     On February 8, 2012, after further timely notice to the FDIC, JPMC entered into the Settlement, paying Connecticut $2.65 million to settle all tax claims against WMB through 2008.  JPMC believes that the Settlement is favorable to WMB.  In the closing agreement accompanying the payment, JPMC and Connecticut agreed that "[t]his agreement does not constitute an admission or imply that [JPMC] or its subsidiaries or affiliates assumed the assessed liability when JPMC purchased the assets and assumed certain liabilities of the taxpayer [*i.e.*, WMB]."

13.     Because JPMC did not assume liability for the tax claims covered by the Settlement, JPMC is entitled to indemnification from the FDIC under the P&A Agreement for "any and all costs, losses, liabilities, expenses (including attorneys' fees) . . . , judgments, fines and amounts paid in settlement actually and reasonably incurred in connection with" the Settlement and this suit.

## PARTIES

14.     Plaintiff JPMC is a national banking association organized under the laws of the United States of America with its principal place of business in Columbus, Ohio.  JPMC is the "Assuming Bank" as that term is defined in the P&A Agreement.

15.     Defendant the FDIC-Receiver is a federal corporation with its principal place of business in the District of Columbia.

16.     Defendant FDIC-Corporate is a federal corporation with its principal place of business in the District of Columbia.  In fact, Defendants the FDIC-Receiver and FDIC-Corporate are the same federal corporation but claim to act, including entering into contracts and suing and being sued, in separate capacities.

## JURISDICTION AND VENUE

17.     This Court has jurisdiction over this action pursuant to 12 U.S.C. § 1819(a)(Fourth) and (b)(2)(A) and 28 U.S.C. §§ 1331, 1332(a)(1), 2201, and 2202.

18.     Venue of this action is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1), (b)(2), and (e).

## STATEMENT OF FACTS

19.     On September 25, 2008, the Office of Thrift Supervision closed WMB and appointed the FDIC-Receiver as its receiver.

20. That same day, JPMC, the FDIC-Receiver, and FDIC-Corporate entered into the P&A Agreement, under which JPMC purchased essentially all of the assets and assumed certain specified liabilities of WMB.

21. While JPMC acquired the FDIC's title to essentially all the assets of WMB, "whether or not reflected on the books of" WMB (P&A Agreement § 3.1), JPMC did not assume all of the liabilities of WMB, but rather assumed only an expressly defined subset of them. The P&A Agreement provides that JPMC "expressly" assumed "at Book Value . . . all of the liabilities of the Failed Bank which are reflected on the Books and Records of the Failed Bank as of Bank Closing." (*Id*. § 2.1.) "Book Value" is defined as "the dollar amount [of an assumed liability] stated on the Accounting Records of the Failed Bank." (*Id*. Art. I.) The definition of "Accounting Records" is "the general ledger and subsidiary ledgers and supporting schedules which support the general ledger balances." (*Id*.) "Bank Closing" is the date on which WMB was closed, September 25, 2008. (*Id*.)

22. Therefore, with certain explicit exceptions not relevant here, JPMC assumed under the P&A Agreement no liability that was not reduced to a dollar amount on WMB's general ledger, subsidiary ledgers and supporting schedules as of September 25, 2008.

23. No liability to Connecticut was reflected on WMB's Books and Records as of September 25, 2008. No liability for taxes owed to Connecticut had been reduced to a dollar amount on WMB's general ledger, subsidiary ledgers and supporting schedules as of September 25, 2008. On the contrary, WMB's books and records showed a refund due from Connecticut—an asset—of $6.2 million. Accordingly, based on the plain language of the P&A Agreement, JPMC did not assume any liability for taxes payable to Connecticut.

24.     On October 8, 2008, Richard Peyster, an attorney employed by the FDIC, sent an email message to Allen Friedman and Benjamin Lopata of JPMC's tax department. (Exhibit B hereto.)  Mr. Peyster wrote, "With regard to any tax liability arising out of an ongoing or future audit, where no assessment had been made prior to the date of closing, such liability would not pass to [JPMC].  Only liabilities on the books as of the date of the agreement pass." (*Id*.)  Said differently, the FDIC has confirmed in writing the plain meaning of the P&A Agreement and the FDIC's contemporaneous understanding of that agreement, and represented to JPMC that liabilities of exactly the sort at issue here were retained by the FDIC-Receiver and not assumed by JPMC.

25.     In line with this understanding, the FDIC-Receiver provided JPMC with a form letter to send to state tax authorities that approached JPMC seeking payment of WMB's taxes.  (Exhibit C hereto.)  As the FDIC-Receiver explained in that letter, newly asserted tax assessments against WMB for periods prior to WMB's closure did not pass to JPMC and had to be filed as claims against WMB's receivership.  (*Id*.)  With the FDIC-Receiver's permission, JPMC sent this letter to multiple states.

26.     The FDIC-Receiver agreed to indemnify JPMC for certain matters set forth in Article XII of the P&A Agreement.  Specifically, with exceptions not relevant here, the FDIC-Receiver agreed to indemnify JPMC for "any and all costs, losses, liabilities, expenses (including attorneys' fees) . . . , judgments, fines and amounts paid in settlement actually and reasonably incurred in connection with claims against [JPMC] . . . based on liabilities of the Failed Bank that are not assumed by the Assuming Bank pursuant to this Agreement . . . ." (P&A Agreement § 12.1(a).)  The FDIC-Receiver must also indemnify JPMC against "claims based on any action or inaction prior to Bank Closing of the Failed Bank, its directors, officers,

employees or agents as such, or any Subsidiary or Affiliate of the Failed Bank, or the directors, officers, employees or agents as such of such Subsidiary or Affiliate." (*Id*. § 12.1(a)(4).)

27.     Under the P&A Agreement, FDIC-Corporate "guarantees performance of the [FDIC-]Receiver's obligation to indemnify the Assuming Bank [*i.e.*, JPMC] as set forth in this Article XII." (*Id*. § 12.7.)

28.     In October and December 2009, over a year after the closure of WMB, Connecticut issued tax assessments against WMB, seeking approximately $26 million in tax payments for the years 2000 to 2005. (Exhibits D and E hereto.) Connecticut subsequently indicated orally that the correct amount of the assessments is $16 million. Connecticut sought payment of this amount from JPMC and did not file a proof of claim with the FDIC-Receiver.

29.     Pursuant to a power of attorney granted by the FDIC-Receiver (Exhibit F hereto), and as the FDIC-Receiver's agent with respect to WMB's taxes, JPMC negotiated the Settlement, whereby Connecticut would receive $2.65 million in exchange for relinquishing any claims against WMB for taxes for all years through 2008, the year of WMB's closing. The Settlement covers not only the asserted liabilities for the years 2000 to 2005, but also any as-yet-unassessed liabilities for the years 2006 to 2008.

30.     Because no tax liability to Connecticut was reflected on WMB's Books and Records upon WMB's closure, and therefore JPMC did not assume any tax liability of WMB to Connecticut, JPMC's tax department informed the FDIC-Receiver of the proposed Settlement on June 14, 2011 and asked how the FDIC-Receiver wanted to proceed. (Email from Tom McEvoy to Jim Thormahlen, Exhibit G hereto.) JPMC advised the FDIC-Receiver that if the FDIC-Receiver "ha[d] any questions or need[ed] additional information on the audit," JPMC would be glad to provide it. (*Id*.)

31.     The FDIC-Receiver did not ask any questions or request additional information.  Instead, the FDIC-Receiver responded that "the tax obligations due the State of Connecticut were reflected on JPMC's [*sic*: WMB's] books and records when it was closed" and refused to acknowledge that it retained such obligations under the P&A Agreement.  (July 11, 2011 letter from Robert C. Schoppe to Brian A. Bessey, Exhibit H hereto.)

32.     On September 30, 2011, JPMC asked Connecticut to leave the Settlement offer open for an additional thirty days so that JPMC could continue to work with the FDIC-Receiver.

33.     In response to the FDIC-Receiver's letter, JPMC's counsel sent a letter to the FDIC-Receiver on September 30, 2011 noting that WMB's Books and Records reflected no liability to Connecticut, but instead showed a $6.2 million tax *refund*.  (Letter from Robert A. Sacks to Richard J. Osterman, Jr., Exhibit I hereto.)  JPMC's counsel wrote, "If you still maintain that Connecticut's audit deficiencies—which did not exist until months after WMB failed—were reflected on WMB's books and records when WMB failed, please identify with specificity what book or record you are referring to, and at what value the audit deficiencies were listed in that book or record."  (*Id.*)  JPMC's counsel pointed out that time was of the essence and that JPMC had asked for a thirty-day extension from Connecticut.

34.     On October 3, 2011, Connecticut agreed to a thirty-day extension, until November 2, 2011.

35.     As of October 10, 2011, the FDIC-Receiver had not responded to the letter from JPMC's counsel.  JPMC's counsel sent another letter, stating that "this matter involves a proposed settlement that is likely to be available for a limited time only before Connecticut commences litigation and demands a much higher amount.  This matter is not new:  JPMC's tax

group notified the FDIC of the proposed settlement nearly four months ago." (Letter from Robert A. Sacks to Richard J. Osterman, Jr., Exhibit J hereto.)

36.     Eight days later, on October 18, 2011, the FDIC-Receiver had not responded to either letter.  JPMC's counsel tried again:  "To enable this matter to be resolved short of litigation, JPMC obtained a 30-day extension from Connecticut to accept the State's settlement proposal, which will expire on November 2.  Because time is running out, I ask that you respond to my letters or call me as soon as possible." (Letter from Robert A. Sacks to Richard J. Osterman, Jr., Exhibit K hereto.)

37.     On October 26, 2011, just one week before Connecticut's extension was set to expire, the FDIC-Receiver responded, summarily asserting that "WMB's tax obligations to the State of Connecticut were reflected on its books and records when it was closed." (Letter from Robert C. Schoppe to Robert A. Sacks, Exhibit L hereto.)  The FDIC-Receiver did not identify any Book or Record on which it based this conclusion.  The FDIC-Receiver stated, "Your letters indicate that time is of the essence in responding to Connecticut's offer to settle a $26 million tax liability for $2.65 million.  If you believe that it is in JPMC's interest to accept Connecticut's offer, you should do so.  Because this is a liability that passed to JPMC under the P&A [Agreement], you are not entitled to indemnification for any payment to Connecticut and do not need the FDIC-R[eceiver]'s permission to settle this claim." (*Id.*)

38.     On February 8, 2012, JPMC paid Connecticut $2.65 million to settle all tax claims against WMB through 2008.  In the closing agreement accompanying the payment, JPMC and Connecticut agreed that "[t]his agreement does not constitute an admission or imply that [JPMC] or its subsidiaries or affiliates assumed the assessed liability when JPMC purchased the assets and assumed certain liabilities of the taxpayer [*i.e.*, WMB]." (Exhibit M hereto.)  The

closing agreement accompanying the payment specifically allows it to be disclosed in the context of litigation seeking indemnification from the FDIC.  (*Id.*)

39.    The P&A Agreement requires the FDIC-Receiver to indemnify JPMC for "any and all costs, losses, liabilities, expenses (including attorneys' fees) . . . , judgments, fines and amounts paid in settlement actually and reasonably incurred in connection with" this suit and other matters described in Article XII of the P&A Agreement.  (P&A Agreement § 12.1.)

40.    To the extent that the FDIC-Receiver does not or cannot meet its obligation to indemnify JPMC, FDIC-Corporate guarantees this obligation.

## CLAIMS FOR RELIEF

### Count One:  Indemnification

41.    JPMC realleges and incorporates by reference each and every allegation set forth above, as though fully set forth herein.

42.    As set forth above, the FDIC-Receiver has agreed to indemnify JPMC for "any and all costs, losses, liabilities, expenses (including attorneys' fees) . . . , judgments, fines and amounts paid in settlement actually and reasonably incurred in connection with" tax assessments against WMB that were not reflected on WMB's Books and Records as of September 25, 2008.

43.    As set forth above, FDIC-Corporate has agreed to guarantee this indemnity.

44.    No liability for taxes to the State of Connecticut was reflected on WMB's Books and Records as of September 25, 2008.

45.    JPMC has paid the amount of the Settlement, $2.65 million.

46.    The FDIC-Receiver and FDIC-Corporate are liable to JPMC for the amount of the Settlement ($2.65 million), as well as any and all costs, losses, liabilities, expenses

(including attorneys' fees), judgments, fines and amounts paid in settlement actually and reasonably incurred in connection with the Connecticut tax liability and/or this suit.

<u>**Count Two: Declaratory Judgment**</u>

47.     JPMC realleges and incorporates by reference each and every allegation set forth above, as though fully set forth herein.

48.     As set forth above, JPMC contends that it did not assume any liability under the P&A Agreement for taxes that WMB owes to Connecticut.  In its letters to JPMC, the FDIC-Receiver has disputed this contention.

49.     There is thus an actual controversy that is of sufficient immediacy to warrant judicial relief under the Declaratory Judgment Act, 28 U.S.C. § 2201.

50.     No liability for taxes owed to Connecticut was reduced to a dollar amount on WMB's Books and Records as of September 25, 2008.  Under the P&A Agreement, JPMC did not assume any liability for these taxes or for any other liabilities of WMB that either (i) did not have a Book Value on WMB's Books and Records as of that date or (ii) exceed any such Book Value.

51.     JPMC requests a declaratory judgment that (i) under the P&A Agreement, other than "expressly assumed" liabilities, JPMC did not assume any liability of WMB that was not recorded on September 25, 2008 as a dollar amount on WMB's "general ledger and subsidiary ledgers and supporting schedules which support the general ledger balances"; (ii) JPMC's liability for any such assumed liability is limited to the recorded dollar amount; and (iii) any liability for taxes that WMB owes to Connecticut was not assumed by JPMC under the P&A Agreement.

WHEREFORE, Defendant JPMC respectfully requests that this Court grant judgment:

A.      Issuing a declaration as described above,

B.      ordering the FDIC-Receiver to indemnify JPMC for the amount of the

Settlement ($2.65 million) and any and all costs, losses, liabilities, expenses (including attorneys'

fees), judgments, fines and amounts paid in settlement actually and reasonably incurred in

connection with the Connecticut tax liability and/or this suit,

C.      ordering FDIC-Corporate to guarantee the FDIC-Receiver's indemnity,

and

D.      awarding interest and such additional relief to JPMC as the Court may

deem just and proper.

Dated:   March 23, 2012                       Respectfully submitted,
         Washington, D.C.

Robert A. Sacks                               Brent J. McIntosh (D.C. Bar No. 991470)
sacksr@sullcrom.com                           mcintoshb@sullcrom.com
SULLIVAN & CROMWELL LLP                       SULLIVAN & CROMWELL LLP
1888 Century Park East                        1701 Pennsylvania Avenue, N.W.
Los Angeles, California  90067                Washington, D.C.  20006
Telephone:  (310) 712-6600                    Telephone:  (202) 956-7500
Facsimile:  (310) 712-8800                    Facsimile:  (202) 293-6330

                                              *Counsel for Plaintiff*
                                              *JPMorgan Chase Bank, N.A.*